An examination of the proofs below amply support the trial court's findings of fact.

The Court of Appeals of Maryland considered a case in which the facts were strikingly similar to those presented here and came to the same conclusion as the court below. *Laurel Realty Co. v. Himelfarb*, 194 *Md.* 672, 72 *A. 2d* 23 (1950).

The judgment is affirmed.

ANNIE GREEN, PETITIONER-RESPONDENT, v. SIMPSON & BROWN CONSTRUCTION CO., RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 8, 1953—Decided June 17, 1953.

Before Judges Freund, Stanton and Francis.

Mr. *Frank Fink* argued the cause for the respondent-appellant (Mr. *James J. Carroll*, attorney).

Mr. *Mortimer Wald* argued the cause for the petitioner-respondent.

Stanton, J. A. D. (temporarily assigned). This is an appeal from a judgment of the Essex County Court reversing a judgment of dismissal entered in the Division of Workmen's

Compensation. The dismissal was predicated on a finding that the petitioner had failed to establish that the Division had jurisdiction of the subject matter and that the decedent's death resulted from an accident arising out of and in the course of his employment with the respondent.

The petitioner's proofs were to the effect that the decedent was employed by the respondent as a watchman on a dredge which on Saturday, January 27, 1951 was moored alongside a pier in the Passaic River, a navigable stream; that his duties included watching the defendant's dredge, taking care of the fires under the boilers, banking them and getting up steam as the occasion required, and pumping bilge water from the vessel.

At 9:15 A. M. on the day mentioned, the decedent entered a gate leading to the premises of the Sun Oil Company on Doremus Avenue in Newark with the intention of crossing the same to reach the dredge where he was to be employed continuously from that time until the following Monday morning. His passage through the gate was noted by a special officer of the Sun Oil Company, who wrote his name in a book in which he made a record of all persons entering the premises. This officer testified that after the decedent passed through the gate he walked toward the river front. As far as the proofs disclose, that was the last time the decedent was seen alive. His body was recovered from the Passaic River on May 12, 1951. In the death certificate in evidence, drowning was given as the cause of his death. There was testimony by Frankie G. Green, who like the petitioner herein claims to be the widow of the decedent, that she had accompanied the decedent to the gate of the Sun Oil Company on the morning in question and had seen him enter the gate. She had come there in an automobile and she left as he entered the gate. She said that it had been sleeting and snowing and that the roads at the time were "icy and slippery." It might be said here that she also filed a petition for compensation and proofs were taken on both petitions at the same time. Her petition was likewise dismissed, but she is not a party to this appeal.

From the testimony as to the nature of the decedent's employment and duties, it might be said that this case falls within the "twilight zone" doctrine enunciated in *Davis v. Department of Labor*, 317 *U. S.* 249, 63 *S. Ct.* 225, 87 *L. Ed.* 246 (1943), and which was applied in *Allisot v. Federal Building & Dry Dock Co.*, 4 *N. J.* 445 (1950), where it was held that a claimant employed as a painter on the extensive reconstruction of an army transport moored alongside a pier in navigable waters had recourse to our state law for his remedy for injuries sustained as a result of an accident arising out of and in the course of his employment. Assuming, *arguendo*, that the Division of Workmen's Compensation had jurisdiction, the question then arises as to whether or not the petitioner sustained the burden of proving that the decedent's death was due to an accident arising out of and in the course of his employment with the respondent. *Bryant, Adm'x. v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913).

In *Nardone v. Public Service, etc. Co.*, 113 *N. J. L.* 540 (*Sup. Ct.* 1934), the proofs as here were entirely circumstantial; the employee was found seriously injured on his employer's premises and died shortly thereafter from skull injuries; there were no witnesses to the happening which caused his death. The court in that case said:

"An accident arises 'out of' the employment when it is something the risk of which might have been contemplated by a reasonable person, as incidental to it. And a risk is incidental to the employment where it belongs to or is connected with what a workman has to do in fulfilling his contract of service. * * * Thus whether the proof be direct proof, circumstantial or presumptive proof, *i. e.*, based on a proper deducible inference, or both, it must show that the cause of death was due to a risk which was directly or indirectly connected with it or incidental to the employment. This is the real test."

It then reviewed the facts and conclusions in a number of cases in this State and made this conclusion:

"* * * in each case where liability was imposed on the employer, and sustained, on presumptive or circumstantial evidence there is to be found circumstances which form the basis for a

rational inference, tantamount to legal proof of the fact, that the accident resulting in death arose 'out of' and 'in the course of' the employment."

It was held there that the petitioner had failed to sustain the burden of proof.

The court below in reaching the conclusion that the petitioner had proved a compensable accident relied on the authority of *Jochim v. Montrose Chemical Co.*, 3 *N. J.* 5 (1949) and *Macko v. Herbert Hinchman & Son*, 24 *N. J. Super.* 304 (*App. Div.* 1953).

In the latter case we find this expression by the court:

"The death of an employee from accident, before he has an opportunity to give his version of the accident and to tell why he was at the place where the misadventure happened, is apt to leave his dependents utterly unable to present evidence that would be considered sufficient in a case where death had not occurred and the employee was able to testify. In recognition of that fact, courts in death cases generally are satisfied with very scanty circumstantial evidence that the accident arose out of, and in the course of, the employment."

On the following facts as stated in the opinion of the court:

"The respondent sells ready-mixed concrete. Decedent had the task of loading the concrete mixers or trucks with batches of sand and cement. This work was done on the same property where respondent's sand pit was located and not far from it. On September 7, 1951 decedent began work about 7 A. M., the regular time. Two hours or so later, he was seen walking toward the sand pit. A few minutes thereafter the driver of a concrete truck inquired for him at the place where the trucks were usually loaded, and was told he was at the pit. So the driver and another employee went to the sand pit, saw no one there, but did observe signs of a fresh cave-in of the sand. They dug and found decedent, suffocated by the sand."

it was concluded that the petitioner had sustained the burden of proof.

In the *Jochim* case there was an award of compensation to the widow of an employee who was found dead on his employer's premises, though there was no witness to the occur-

rences leading up to his death. The proofs there, in the language. of the court, were:

"* * * the decedent was employed as a chemical operator in charge of a department making ergosterol. He had a key to his employer's plant and his duties included, *inter alia*, the opening of the plant in the morning and closing it at night. On the morning of January 29, 1943, he left home for work in his street clothes. Shortly thereafter he was found dead on the concrete floor of the plant, his feet close to the steps leading to a platform above on which vats were located. He was found in his work clothes, there was 'brownish dirt' on the palms of both hands and he was wearing his work shoes covered by rubber overshoes. The floor at the time was 'slippery and' moist' and the stairs were also 'moist' which was not an unusual condition at this location. Decedent's duties included not only the performance of work at the floor level, but also the mounting of the steps and the checking of the vats on the platform. * * * An autopsy disclosed that the death resulted from a recent fracture of the skull due to a 'blunt force injury applied in the left occipital region' and 'there were no other external marks of injury except the bruise abrasion' over this region."

█ In the case *sub judice* there is no proof whatever with respect to the decedent from the time he passed through the gate of the Sun Oil Company until the finding of his body in the river months later. There is no proof that he ever reached the dredge where he was to perform services for his employer or even that he reached the pier to which it was moored. We have only the fact that he died of drowning and that his body was found in the Passaic River. It does not appear how, when, where, or under what circumstances or by what cause it entered the river. We have nothing here that even approximates in probative value the evidence in the *Macko* case which the court there characterized as being slight. And the same observation may be made as to a comparison with the proofs in the *Jochim* case.

█ With a full realization of the well-recognized doctrine that the Workmen's Compensation Act is a remedial one which should be liberally construed, we are of the opinion that the petitioner has failed to sustain the burden of proof; that the circumstantial evidence here does not form a basis for a rational inference, tantamount to legal proof of the fact,

that the death of the decedent was due to an accident arising out of and in the course of his employment.

The judgment of the County Court is reversed and that of the Workmen's Compensation Division is affirmed without costs.